IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER STROTHERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-1624 |
| | ) | |
| SAMUEL NASSAN, | ) | Judge Nora Barry Fischer |
| | ) | U.S. District Judge |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

Plaintiff Christopher Strothers ("Strothers") brought this action against Defendant Samuel Nassan ("Nassan"), alleging that he had been unreasonably seized and battered in violation of both the United States Constitution and Pennsylvania law. Currently pending before the Court is a partial motion to dismiss filed by Nassan pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 14). For the reasons that follow, that motion is denied.

**II.  Factual Background**

Since this matter comes before the Court on a motion to dismiss, the allegations contained in Strothers' amended complaint are assumed to be true. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). According to the amended complaint, Strothers is a black male who resides in Allegheny County, Pennsylvania. (Docket No. 13, ¶¶ 1, 3). At the time of the events at issue, he was twenty-seven years old. (*Id.*, ¶ 3). Nassan is a white male employed by the Pennsylvania State Police ("PSP") as a police officer. (*Id.*, ¶¶ 2, 7).

During the early morning hours of July 6, 2008, Strothers was on the premises of

Rumshaker's Bar ("Rumshaker's"), which is located on East Carson Street in Pittsburgh, Pennsylvania. (*Id.*, ¶ 3). After exiting Rumshaker's, Strothers began to speak with his friend, Jermaine Anderson ("Anderson"), who is a black female, on a nearby sidewalk. (*Id.*, ¶ 4). Anderson became engaged in a verbal argument with some of her friends, all of whom were black females. (*Id.*, ¶ 5). This argument attracted the attention of police officers employed by the City of Pittsburgh Bureau of Police ("CPBP"). (*Id.*). Members of the CPBP arrived at the scene of the argument and requested that the individuals disperse. (*Id.*). The individuals complied with this request, and no arrests were made by members of the CPBP. (*Id.*, ¶ 6).

As the individuals began to disperse, Nassan arrived at the scene. (*Id.*, ¶ 7). He demanded to know what the problem had been. (*Id.*). Nassan violently apprehended one of Anderson's black female friends and placed her in handcuffs. (*Id.*, ¶ 8). When the female spoke, Nassan told her that he would take her "black ass" to the corner and beat her "ass" if she did not "shut the fuck up." (*Id.*). He apprehended a second black female friend of Anderson, pushing her against the outside of Rumshaker's. (*Id.*, ¶ 9). Nassan then seized Strothers and threw him to the ground. (*Id.*, ¶ 10). Warning Strothers to "shut up," Nassan exclaimed, "I am going to take your little black ass to the corner and beat your ass." (*Id.*). Nassan threw Strothers against a car, handcuffed him, and placed him in the back of a police car. (*Id.*, ¶ 11).

With Strothers in the police car, Nassan drove away from Rumshaker's. (*Id.*, ¶ 12). After driving to a side street off of East Carson Street, Nassan ordered Strothers out of the police car, uncuffed him, and prepared citations against him for disorderly conduct[1] and public drunkenness.[2]

---

[1]Pennsylvania's disorderly conduct statute provides:
§ 5503. Disorderly conduct
(a) OFFENSE DEFINED.–A person is guilty of disorderly conduct if, with intent to cause public

(*Id.*). At that point, Strothers was free to go. (*Id.*). He had not consumed any alcoholic beverages that evening. (*Id.*). During his altercation with Nassan, Strothers suffered injuries to his back, left ankle and left wrist. (*Id.*, ¶¶ 10, 13). His left ankle was severely fractured, and the muscles, ligaments, tendons, tissues and nerves in the affected areas of his body were damaged. (*Id.*).

## III. Procedural History

On November 12, 2008, Strothers commenced this action against Nassan and the PSP in the Court of Common Pleas of Allegheny County, Pennsylvania, alleging violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution and the tort law of Pennsylvania. (Docket No. 1-3, ¶¶ 16-31). His federal constitutional claims were brought pursuant to 42 U.S.C. § 1983. His state-law claims were brought as common-law battery claims. Nassan was sued in both his official and individual capacities. (*Id.*, ¶ 3). On November 26, 2008, the Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441. (Docket No. 1). The Defendants filed a partial motion to dismiss on January 9, 2009, seeking the dismissal of the battery claims, the

---

inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
(1) engages in fighting or threatening, or in violent or tumultuous behavior;
(2) makes unreasonable noise;
(3) uses obscene language, or makes an obscene gesture; or
(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.
(b) GRADING.–An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.
18 PA. CONS. STAT. § 5503.

[2]Pennsylvania's public drunkenness statute provides:
A person is guilty of a summary offense if he appears in any public place manifestly under the influence of alcohol or a controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, except those taken pursuant to the lawful order of a practitioner, as defined in the Controlled Substance, Drug, Device and Cosmetic Act, to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity.
18 PA. CONS. STAT. § 5505.

Eighth[3] and Fourteenth[4] Amendment claims, all official-capacity claims against Nassan, and all claims against the PSP.[5] (Docket No. 5). While the motion to dismiss was still pending, Strothers sought leave to file an amended complaint.[6] (Docket No. 11). The Court granted this request on February 19, 2009, and Strothers filed his amended complaint later that day. (Docket Nos. 12 and 13).

The amended complaint does not name the PSP as a defendant, and it names Nassan only in his individual capacity. (Docket No. 13, ¶ 2). Although Strothers has withdrawn all claims based on the Eighth Amendment, he now alleges that Nassan's actions were violative of the Equal Protection Clause of the Fourteenth Amendment. (*Id.*, ¶ 22). He also continues to assert state-law battery claims against Nassan. (*Id.*, ¶¶ 14-19). Consequently, this case now involves claims arising under the Fourth Amendment,[7] the Equal Protection Clause, and Pennsylvania law.

The Court has jurisdiction over the federal constitutional claims pursuant to 28 U.S.C. §

---

[3] The facts alleged by Strothers do not implicate any right protected under the Cruel and Unusual Punishment Clause of the Eighth Amendment, since that provision becomes applicable only after an individual has been convicted of a crime. *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005).

[4] Where a particular provision of the Bill of Rights provides an explicit source of constitutional protection against a specific category of governmental action, the more generalized notion of "substantive due process" is inapplicable. *Albright v. Oliver*, 510 U.S. 266, 273 (1994)(plurality opinion).

[5] Because 42 U.S.C. § 1983 has not been construed as an abrogation of the States' Eleventh Amendment immunity, neither a State nor its officials sued in their official capacities are "persons" subject to suits for money damages under that statute. *Will v. Michigan Department of State Police*, 491 U.S. 58, 60-71 (1989).

[6] A motion to dismiss is not a "responsive pleading" within the meaning of Federal Rule of Civil Procedure 15(a). *Centifanti v. Nix*, 865 F.2d 1422, 1431, n. 9 (3d Cir. 1989). Therefore, a plaintiff is ordinarily free to file one amended complaint without leave of court during the pendency of a motion to dismiss. *United States v. Union Corp.*, 194 F.R.D. 223, 228-29 (E.D.Pa. 2000). Nevertheless, in this case, the Defendants filed a partial answer on the same day that they filed the motion to dismiss. (Docket No. 7). Because an answer is a "responsive pleading," Strothers needed leave of court to file his amended complaint. *Coregis Insurance Co. v. Schuster*, 127 F.Supp.2d 683, 688 (E.D.Pa. 2001).

[7] The protections afforded to individuals under the Fourth Amendment are enforceable against the States by virtue of the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

1331. Supplemental jurisdiction over the state-law claims is based on 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391(b). Nassan filed a partial motion to dismiss, along with a supporting brief, on February 24, 2009, seeking the dismissal of Strothers' Equal Protection Clause and battery claims. (Docket No. 14). On March 16, 2009, Strothers filed his response to Nassan's motion to dismiss. (Docket No. 17). As the motion is fully briefed, it is ripe for disposition.

**IV.     Standard of Review**

In light of the United States Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)(quoting *Twombly*, 550 U.S. at 570). This standard requires more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The complaint must allege a sufficient number of facts "to raise a right to relief above the speculative level." *Id.* This requirement is designed to facilitate the notice-pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of [a] claim *showing that the pleader is entitled to relief.*" FED. R. CIV. P. 8(a)(2)(emphasis added).

In considering a motion to dismiss, a court accepts all of the plaintiff's allegations as true and construes all inferences drawn from those allegations in the light most favorable to the plaintiff. *Buck v. Hampton Township School District*, 452 F.3d 256, 260 (3d Cir. 2006). Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the

complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). In addition to the allegations contained in the complaint, a court may consider matters of public record, exhibits attached to the complaint, and other items appearing in the record of the case. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384, n. 2 (3d Cir. 1994).

V.  **Discussion**

Nassan seeks the dismissal of Strothers' Equal Protection Clause and battery claims. (Docket No. 14). He does not challenge the sufficiency of the amended complaint with respect to the Fourth Amendment claims. Nassan contends that the allegations contained in the amended complaint are insufficient to establish a violation of the Equal Protection Clause, and that Pennsylvania law immunizes him from the battery claims.[8] (Docket No. 15 at 3-7).

A.  **The Equal Protection Clause Claims**

Strothers' federal constitutional claims are brought pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered

---

[8]Of course, an immunity afforded to a state official under state law cannot defeat a cause of action arising under federal law. *Martinez v. California*, 444 U.S. 277, 284, n. 8 (1980).

6

to be a statute of the District of Columbia.

42 U.S.C. § 1983. This statute does not create substantive rights. *Maher v. Gagne*, 448 U.S. 122, 129, n. 11 (1980). A plaintiff cannot prevail in an action brought under § 1983 without establishing an underlying violation of a federally protected right. *Collins v. City of Harker Heights*, 503 U.S. 115, 119 (1992). "Section 1983 itself contains no state-of-mind requirement independent of that necessary to state a violation of the underlying federal right." *Board of County Commissioners v. Brown*, 520 U.S. 397, 405 (1997)(internal quotation marks omitted).

The first step in the Court's analysis is to "identify the exact contours of the underlying right said to have been violated." *County of Sacramento v. Lewis*, 523 U.S. 833, 841, n. 5 (1998). The federal rights invoked by Strothers are based on § 1 of the Fourteenth Amendment, which provides:

> All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST., AMEND. XIV, § 1. Since the Due Process Clause incorporates the protections of the Fourth Amendment[9] and makes them enforceable against state actors, Strothers' Fourth Amendment claims are technically based on the Due Process Clause. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). Those claims are not presently at issue. Strothers' remaining federal claims, which are based on the Equal Protection Clause, are challenged by Nassan's partial motion to dismiss.

---

[9]The Fourth Amendment to the United States Constitution provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. CONST., AMEND. IV.

7

The jurisprudence of the Supreme Court has made it clear that the Equal Protection Clause limits the actions of executive officials as well as the permissible scope of legislative enactments. *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886). The primary purpose of the Equal Protection Clause is "to secure every person within [a] State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923). In *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), the Supreme Court declared that state-occasioned discrimination against a particular individual (i.e., discrimination against a "class of one") violates the Equal Protection Clause where there is "no rational basis" for treating the aggrieved individual "differently from others similarly situated."

Nassan argues that Strothers' amended complaint offers no allegations sufficient to "nudge [the Equal Protection Clause] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. This argument is without merit. First of all, the amended complaint specifically alleges that Strothers was "singled out" for unjustified force and detention. (Docket No. 13, ¶ 22). Implicit in this allegation is an assertion that other individuals were not treated in the same manner as Strothers. There is no requirement that a plaintiff pursuing a claim under the Equal Protection Clause allege "specific instances where others have been treated differently." *Phillips*, 515 F.3d at 245. In addition, the amended complaint contains allegations that Nassan made racially-motivated remarks to Strothers and two black females while apprehending them, and that Strothers was treated unfavorably because of his race. (*Id.*, ¶¶ 8, 10, 22). Because racially-motivated discrimination lies at the very core of what the Equal Protection Clause was designed to prohibit, classifications based on race trigger the most exacting judicial scrutiny known to constitutional law. *Miller v. Johnson*,

515 U.S. 900, 904-905 (1995). It is firmly established that the Equal Protection Clause prohibits selective enforcement of the law based on race. *Whren v. United States*, 517 U.S. 806, 813 (1996). A selective enforcement claim can succeed even if the law enforcement action at issue (i.e., the arrest or detention) was effectuated in conformity with the Fourth Amendment. *Johnson v. Crooks*, 326 F.3d 995, 999-1000 (8th Cir. 2003).

It must be acknowledged that police officers have a significant degree of discretion to determine when to make an arrest, and when not to make an arrest. For this reason, Strothers' averments might not be sufficient to state a claim under the Equal Protection Clause if they were not interspersed with allegations that Nassan's actions were the result of a racially-based animus. Nevertheless, the racial overtones contained in the amended complaint are clearly sufficient to defeat Nassan's motion to dismiss. In *Engquist v. Oregon Department of Agriculture*, 128 S.Ct. 2146 (2008), the Supreme Court explained:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.
> Suppose, for example, that a traffic officer is stationed on a busy highway where people often drive above the speed limit, and there is no basis upon which to distinguish them. If the officer gives only one of those people a ticket, it may be good English to say that the officer has created a class of people that did not get speeding tickets, and a "class of one" that did. But assuming that it is in the nature of the particular government activity that not all speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification. Such a complaint, rather, challenges the legitimacy of the underlying action itself–the decision to ticket speeders under such circumstances. *Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such*

9

> *discriminatory classifications implicate basic equal protection concerns.* But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective or individualized.

*Engquist*, 128 S.Ct. at 2154 (emphasis added). This language from *Engquist* illustrates that a police officer who arrests an individual because of his or her race violates the Equal Protection Clause even if the arrest is otherwise legal. Strothers alleges that Nassan's actions were objectively violative of the Fourth Amendment, but that does not affect the analysis of the Equal Protection Clause issue, which centers on Nassan's subjective motivation for arresting Strothers. *Whren*, 517 U.S. at 813.

The amended complaint alleges not only that Nassan's actions were racially motivated, but also that he engaged in racially-based verbal intimidation while taking those actions. (Docket No. 13). The interests implicated by these allegations lie at the very core of the Equal Protection Clause, not at its outer edges. *Alexis v. McDonald's Restaurants of Massachusetts, Inc.*, 67 F.3d 341, 353-54 (1st Cir. 1995). Accordingly, Nassan's partial motion to dismiss is denied with respect to Strothers' claims under the Equal Protection Clause.

**B.     The Battery Claims**

"An actor is subject to liability to another for battery if he [or she] acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and an offensive contact with the person of the other directly or indirectly results." *Montgomery v. Bazaz-Sehgal*, 742 A.2d 1125, 1130 (Pa.Super.Ct. 1999). In this case, there appears to be no dispute that the amended complaint alleges that Nassan committed a battery (or multiple batteries) upon Strothers. Nassan's sole basis for seeking the dismissal of

10

Strothers' battery claims is Pennsylvania's Sovereign Immunity Act [42 PA. CONS. STAT. § 8501 *et seq.*], which immunizes state employees from suits for money damages in various instances. (Docket No. 14, ¶ 5(a)).

> Article I, § 11, of the Pennsylvania Constitution provides:
>
> § 11. Courts to be open; suits against the Commonwealth
> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

PA. CONST., ART. I, § 11. As the language of this constitutional provision indicates, it is the prerogative of the Pennsylvania Legislature to specify the types of "cases" which warrant suits against the Commonwealth of Pennsylvania. *Lingo v. Philadelphia Housing Authority*, 820 A.2d 859, 861 (Pa.Commw.Ct. 2003). In accordance with this authority, the Pennsylvania Legislature has enacted 1 PA. CONS. STAT. § 2310, which provides:

> **§ 2310. Sovereign immunity reaffirmed; specific waiver**
> Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure) or 62 (relating to procurement) unless otherwise specifically authorized by statute.

1 PA. CONS. STAT. § 2310. Pursuant to the plain language of this provision, employees of the Commonwealth are entitled to sovereign immunity (except where specifically provided to the contrary by a separate statutory provision) when they act "within the scope of their duties." *Story*

11

*v. Mechling*, 412 F.Supp.2d 509, 518-19 (W.D.Pa. 2006).

The Sovereign Immunity Act makes it clear that, except as specifically provided therein, no statutory provision shall constitute a waiver of the Commonwealth's sovereign immunity. 42 PA. CONS. STAT. § 8521(a). The relevant statutory language is codified at 42 PA. CONS. STAT. § 8522(a), which provides:

> **§ 8522. Exceptions to sovereign immunity**
> **(a) Liability imposed.**–The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

42 PA. CONS. STAT. § 8522(a).[10] The term "Commonwealth party" is defined as "[a] Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment."[11] 42 PA. CONS. STAT. § 8501. It is undisputed that none of the "instances set forth

---

[10] Section 8528(b) of the Sovereign Immunity Act provides that "[d]amages arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall not exceed $250,000 in favor of any plaintiff or $1,000,000 in the aggregate." 42 PA. CONS. STAT. § 8528(b). Section 8528(c) limits the types of damages recoverable from a Commonwealth party to past and future loss of earnings and earning capacity, pain and suffering, medical and dental expenses, loss of consortium, and property losses. 42 PA. CONS. STAT. § 8528(c)(1)-(5). Medical and dental expenses recoverable from Commonwealth parties include "the reasonable value of reasonable and necessary medical and dental services, prosthetic devices and necessary ambulance, hospital, professional nursing, and physical therapy expenses accrued and anticipated in the diagnosis, care and recovery of the claimant." 42 PA. CONS. STAT. § 8528(c)(3). Damages for property losses are not available in actions "relating to potholes and other dangerous conditions." 42 PA. CONS. STAT. § 8528(c)(5).

[11] The term "act" includes "a failure to act." 42 PA. CONS. STAT. § 8501. The term "employee" is defined as follows:
> Any person who is acting or who has acted on behalf of a government unit whether on a permanent or temporary basis, whether compensated or not and whether within or without the territorial boundaries of the government unit, including any volunteer fireman and any elected or appointed officer, member of a governing body or other person designated to act for the government unit. Independent contractors under contract to the government unit and their employees and agents and persons performing tasks over which the government unit has no legal right of control are not employees of the government unit.

12

in subsection (b)" are applicable in this case.[12] The dispositive question is whether Nassan's actions (as alleged in the amended complaint) were taken "within the scope of his office or employment" as a member of the PSP. If so, he is immune from Strothers' battery claims.

In the amended complaint, Strothers avers as follows:

15. Defendant Samuel Nassan's physical handling of, and infliction of injury upon, Christopher Strothers was not warranted, nor was it justifiable under law and, therefore, same constitutes a civil battery.

16. Further, Defendant Nassan's physical handling of, and infliction of injury upon, Christopher Strothers, amounted to an intentional use of excessive force that was not calculated to serve the interests of the Pennsylvania State Police, nor was it of the kind that Nassan was employed to perform, thus taking this battery outside the scope of his duties as a Pennsylvania State Police officer.

(Docket No. 13, ¶¶ 15-16). As an initial matter, Strothers' assertion that the battery allegedly committed by Nassan was "outside the scope of his duties" is nothing more than "a legal conclusion couched as a factual allegation," which need not be credited for purposes of the instant motion to dismiss. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). For this reason, a more extensive analysis of the issue is required.

Under 42 PA. CONS. STAT. § 8550, employees of local agencies are not immune from suits based on acts constituting "willful misconduct." There is no similar provision waiving the immunity

---

42 PA. CONS. STAT. § 8501.

[12]Subsection (b) enumerates nine categories of actionable "acts" for which a Commonwealth party is not entitled to sovereign immunity. 42 PA. CONS. STAT. § 8522(b). These categories are referenced in the statutory language as follows: (1) Vehicle liability; (2) Medical-professional liability; (3) Care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) Potholes and other dangerous conditions; (6) Care, custody or control of animals; (7) Liquor store sales; (8) National Guard activities; and (9) Toxoids and vaccines. 42 PA. CONS. STAT. § 8522(b)(1)-(9). Nassan's actions clearly do not fall within any of these categories of conduct. Moreover, battery is an intentional tort. *Valles v. Albert Einstein Medical Center*, 805 A.2d 1232, 1237 (Pa. 2002). Consequently, a battery cannot be fairly characterized as a "negligent act" within the meaning of § 8522(a).

13

of "Commonwealth parties" who engage in "willful misconduct." *Holt v. Northwest Pennsylvania Training Partnership Consortium, Inc.*, 694 A.2d 1134, 1140 (Pa.Commw.Ct. 1997)("Unlike for local agency employees, willful misconduct does not vitiate a Commonwealth employee's immunity because sovereign immunity protects a Commonwealth employee acting within the scope of his or her employment from liability, even for intentional acts which cause emotional distress."). Consequently, Strothers cannot overcome Nassan's sovereign immunity defense simply by claiming that Nassan exceeded his rightful authority as a police officer. Under Pennsylvania law, even unauthorized actions taken by an employee can fall within the scope of his or her employment if they are "clearly incidental" to his or her employer's objectives. *Brumfield v. Sanders*, 232 F.3d 376, 381 (3d Cir. 2000). In *Natt v. Labar*, 543 A.2d 223 (Pa.Commw.Ct. 1988), the Pennsylvania Commonwealth Court explained:

> Conduct of an employee is within the scope of employment if it is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the employer; and if force is intentionally used by the employee against another, it is not unexpected by the employer.

*Natt*, 543 A.2d at 225.[13] The extent to which the intentional use of "force" is properly characterized as an act within the scope of one's employment depends on the extent of an employer's *expectation* of force rather than on the extent of an employer's *authorization* of force. The question of whether an individual has acted within the scope of his or her employment is ordinarily a question of fact for the jury to decide. *Orr v. William J. Burns International Detective Agency*, 12 A.2d 25, 27 (Pa. 1940). The issue can be decided as a matter of law by a court, however, "where the facts and the

---

[13]This language appears to come directly from the *Restatement (Second) of Agency*, § 228. *Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1272 (Pa.Super.Ct. 1979).

inferences to be drawn from them are not in dispute." *Id.*

Several of the decisions discussing whether an action has been taken within the scope of one's employment concern not whether a government employee is entitled to sovereign immunity, but rather whether his or her employer is vicariously liable for the action at issue. In *Howard v. Zaney Bar*, 85 A.2d 401, 402-403 (Pa. 1952), the Pennsylvania Supreme Court addressed a situation in which a male patron of a bar had been shot by a bartender after making "passes" or "advances" toward a female patron. Although the bartender had been expected to "maintain order" in the bar, the Pennsylvania Supreme Court concluded that his act of shooting a male patron in retaliation for flirting with a female patron had departed so radically from what had been expected of him as to take his action outside of the scope of his employment. *Howard*, 85 A.2d at 402-403. Contrasting the expectations of a bartender with the expectations of a police officer, the Pennsylvania Supreme Court observed:

> It is to be reasonably expected that in the course of their duties it might become necessary as policemen to make arrests, swear out warrants and even in rare instances to make use of a pistol. The bartender, on the other hand, *qua* bartender, possesses none of the enumerated powers. The extent of his duties is to use reasonable means to maintain order. The extent to which a bartender can act and yet *remain within his scope of employment* is in no way analogous to the extent to which a municipal policeman may act to maintain order.

*Id.* at 403 (emphasis in original). The reasoning employed in *Howard* indicates that a police officer's use of force is often *expected* by his or her employer, thereby bringing such conduct within the scope of his or her duties.

The Pennsylvania Superior Court addressed a situation involving a police officer in *Fitzgerald v. McCutcheon*, 410 A.2d 1270 (Pa.Super.Ct. 1979). In that case, an off-duty police officer threatened his friend with arrest for stealing the keys to his vehicle. *Fitzgerald*, 410 A.2d at

15

1271. Unbeknownst to the officer, his friend had given the keys to the officer's wife in order to prevent the officer, who was intoxicated, from driving. *Id.* In a fit of rage, the officer drew his gun and shot his friend six times. *Id.* Viewing this act as wholly unrelated to the officer's employment responsibilities, the Superior Court held that the officer's employer could not be held vicariously liable for the shooting. *Id.* at 1272. The Superior Court explained:

> A master is liable for the acts of his servant which are committed during the course of and within the scope of the servant's employment. *Lunn v. Yellow Cab Company*, 403 Pa. 231, 169 A.2d 103 (1961); *Potter Title and Trust Company v. Knox*, 381 Pa. 202, 113 A.2d 549 (1955); *Restatement (Second) of Agency* § 219. This liability of the employer may extend even to intentional or criminal acts committed by the servant. *Pilipovich v. Pittsburgh Coal Company*, 314 Pa. 585, 172 A. 136 (1934); *McMillen v. Steele*, 275 Pa. 584, 119 A. 721 (1923); *Restatement (Second) of Agency* § 231. Whether a person acted within the scope of employment is ordinarily a question for the jury. *Orr v. William J. Burns International Detective Agency*, 337 Pa. 587, 12 A.2d 25 (1940); *Straiton v. Rosinsky*, 183 Pa.Super. 545, 133 A.2d 257 (1957). Where, however, the employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reason, the employer is not responsible as a matter of law. If an assault is committed for personal reasons or in an outrageous manner, it is not actuated by an intent of performing the business of the employer and is not done within the scope of employment. *Lunn v. Yellow Cab Company, supra*. See also: *Straiton v. Rosinsky, supra*.

*Id.* at 1271-72. Because the officer's act of shooting his friend had been "so outrageous, so criminal, and so incapable of anticipation by his employer," it was not found to have been within the scope of his duties. *Id.* at 1272. The Superior Court's decision clearly turned on the fact that the officer had shot his friend not in the line of duty as a police officer, but rather because of a "personal animosity" stemming from off-duty activities. *Id.*

Emanating from decisions such as *Howard* and *Fitzgerald* is the principle that "an assault committed by an employee upon another for personal reasons or in an outrageous manner is not actuated by an intent to perform the business of the employer and, as such, is not within the scope

16

of employment." *R.A. v. First Church of Christ*, 748 A.2d 692, 700 (Pa.Super.Ct. 2000). The fact that an assault has been carried out by an employee in an "outrageous manner" may be indicative that the employee has acted out of "private malice" rather than out of an intent to perform his or her duties. *Lunn v. Yellow Cab Co.*, 169 A.2d 103, 105 (Pa. 1961). Though most often applied in the vicarious liability context, this standard has also been applied in the sovereign immunity context. *Robus v. Pennsylvania Department of Corrections*, Civ. A. No. 04-2175, 2006 WL 2060615, at *8, 2006 U.S. Dist. LEXIS 49943, at *26-30 (E.D.Pa. July 20, 2006).

In the amended complaint, Strothers alleges that Nassan's actions were not calculated to serve the interests of the PSP. (Docket No. 13, ¶ 16). He also alleges that he was seized "without reason." (*Id.*, ¶ 10). While legal conclusions need not be credited, Strothers' factual allegations are assumed to be true at this stage. *Morse*, 132 F.3d at 906. Admittedly, Strothers alleges that he was cited for disorderly conduct and public drunkenness, which would appear to indicate that Nassan seized him pursuant to his duties as a police officer. (*Id.*, ¶ 12). Nonetheless, his allegation that he was seized "without reason," and under circumstances not calculated to serve the interests of the PSP, is sufficient to overcome Nassan's sovereign immunity defense at the pleading stage. *Revak v. Lieberum*, Civ. A. No. 08-691, 2008 WL 4858291, at *4, 2008 U.S. Dist. LEXIS 91029, at *11-12 (W.D.Pa. November 10, 2008). Strothers is entitled to engage in discovery concerning the "reasons" for Nassan's actions. Consequently, the partial motion to dismiss filed by Nassan is denied. Nassan remains free to move for summary judgment with respect to this issue if discovery reveals that he acted pursuant to his employment responsibilities rather than pursuant to personal motives unrelated to law enforcement. *Pizzuto v. County of Nassau*, 239 F.Supp.2d 301, 314-16 (E.D.N.Y. 2003).

## VI. Conclusion

Because the allegations made in the amended complaint, when construed in the light most favorable to Strothers, could plausibly entitle Strothers to relief under the Equal Protection Clause of the Fourteenth Amendment and the tort law of Pennsylvania, Nassan's partial motion to dismiss (Docket No. [14]) is denied. An appropriate order follows.

BY THE COURT:

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: April 9, 2009
cc: All counsel of record